Related DISS
FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

2023 AUG 30 AM 9: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY:

| | |
|---|---|
| Joshua Lyons | § |
| 16055 Washington st. | § |
| Riverside, CA 92504 | § |
| (951)410-3754 | § |
| V | § |
| | § |
| DEFENDANTS: | § |

COMPLAINT FOR

VIOLATION OF CIVIL RIGHTS

EDCV23-01755-JAK (SSC)

Plaintiff, Joshua Lyons , by way of Complaint against defendants:
Officer N. Le Beau, #21831
Captain Levi Miller (unknown)- Head Supervisor
Sergeant P. Rogers, #16174- Supervisor
Sergeant C. Bullen, # 14640-Supervisor
Timothy Coran
Susan Gardner and says:

INTRODUCTION

1. This case seeks to protect and vindicate fundamental constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Through the statutory vehicle 42 U.S.C. § 1983, Plaintiff Lyons  alleges that on December 22, 2022, Defendants LeBeau, Coran in retaliation for exercising the constitutional right to freedom of speech and expression. Did conspire to assault, Batter, rob/take property, and kidnap plaintiff Lyons.

2. Plaintiff Lyons seeks a money judgment against all Defendants, and a declaration that while acting under color of state law, defendants LeBeau, Miller, Rogers, Bullen's unconstitutional conduct—preventing him from peaceful protest, seizing his person and automobile without probable cause or reasonable suspicion of a crime, because he was protesting against the police presence, through the display of a raised  middle finger at defendant LeBeau. As well as, failure to intervene and supervise. Defendant LeBeau's actions would chill others from exercising First Amendment freedoms.

3. Plaintiff Lyons  further seeks declaratory, preliminary, and permanent injunctive relief against Defendants LeBeau, Rogers, Miller, Bullen and Coran to stop them from arbitrarily exercising state power for no legitimate governmental reason but to interfere with his fundamental liberty interests and chill First Amendment freedoms.

**Jurisdiction and Venue**

4. Plaintiff Lyons  incorporates by reference complaint paragraphs one through three, as set forth

fully here.

5. This Court has subject matter jurisdiction over the instant cause of action under 28 U.S.C. §§ 1331, 1343,1443,1446, 2201, 2202 and 42 U.S.C. §§ 1983, 1985, 1988.

6. Plaintiff Lyons  claims for declaratory and injunctive relief are
further authorized by Federal Rules of Civil Procedure ("Fed. R Civ. P") 57 and 65, and by the general legal and inherent equitable powers of this Court. Title 42 U.S.C. §§ 1983, 1985 and 1988 authorizes Plaintiff Lyons's claims for damages.

7. Venue is proper under 28 U.S.C. § 1391(b) because Defendants LeBeau, Miller, Rogers, Bullen, Coran, Gardner reside, and the events occurred in the District of California.

## PARTIES

8. Plaintiff, Joshua Lyons , is an adult man and national of United States of America, domiciled in Riverside , California.

9. Defendant Officer Niko LeBeau was at all times relevant an employee of the State of California as a Highway Patrol. At all times herein mentioned, defendant LeBeau was acting under the color of law in his individual capacity as a Officer
 for the California Highway Patrol.

10. Defendant Sergeant P. Rogers was at all times relevant an employee of the State of California as a Highway Patrol . At all times herein mentioned, defendant Rogers  was acting under the color of law in his individual capacity as a Sergeant for the California Highway Patrol.

11. Defendant Sergeant C. Bullen was at all times relevant an Sergeant of the State of California Highway Patrol'. At all times herein mentioned, defendant Bullen was acting under the color of law in his individual capacity as a Sergeant for the California Highway Patrol.

12. Defendant Timothy Coran, resides in Riverside County, and  was a retired law enforcement officer, acting in his individual capacity

 13. Defendant Susan Gardner, resides in Riverside County and was acting as a private citizen, in her individual capacity.

## GENERAL ALLEGATIONS

8. Prior to December 22, 2022, Plaintiff Lyons  became an informal advocate against police abuse.

9. As a result of prior encounters with the law enforcement, Lyons decided to stage protests whenever he sees  law enforcement officers

10. Lyons protest are basic: he simply salutes them all with a middle finger and a smile

11. On December 22, 2022, approximately 12:45pm Plaintiff Lyons  was traveling on Washington Street (southbound ) in Riverside, California when he observed Officer LeBeau driving north on the opposite side of Washington.

12. Plaintiff Lyons was going to the store locate at the corner of Washington and Van Buren, to get Christmas cookie supplies for his disabled mother.

13.  Plaintiff Lyons was stopped in the left turn lane with his blinker active.

14. Plaintiff Lyons  stuck his hand in the air and saluted the marked patrol car with the middle finger.(see plaintiff's exhibit 3)

15. Subsequently, Defendant LeBEAU made a U-turn and followed Lyons into the parking lot.

16. Plaintiff Lyons parked his automobile in a stall, then got out of his truck to go  into the store.

17. Defendant LeBeau gave an unlawful command to get back in his truck. As defendant LeBeau did not witness, nor mention witnessing in his report, (see plaintiff's exhibit 1) any probable

18. Plaintiff calmly walk toward the defendant, as he shouted "get back in your vehicle, what are you doing?".

19. Plaintiff Lyons stopped at a reasonable distance to hear the defendant and asked " what am I doing?, what are you doing?"

20. At which time, defendant LeBeau closed the distance and without warning, grabbed the plaintiff's left hand and attempted to grab his right hand

21. While defendant LeBeau still had ahold of Lyons left hand, the plaintiff pulled his right hand away and in an act of self defense, as the plaintiff knows that law enforcement is prone to inflict serious bodily injury and death, he struck defendant LeBeau in the left side of his head and then grabbed LeBeau in a guillotine headlock.

22. At this point, defendant Coran joined the conspiracy, while holding the plaintiff on the ground defendant LeBeau severely beat the plaintiff, defendant Coran was holding him in a helpless position on the ground. As in the case of compensatory damages, the amount of punitive damages is largely within the discretion of the trier of fact.

23. Defendant Gardner provided false and misleading statements to further the conspiracy to deprive the plaintiff of his constitutional rights.(see plaintiff's exhibit 2&3)

24. Defendant LeBeau's traffic stop was an adverse action taken against Lyons for exercising his First Amendment right to express disapproval of, and disagreement with, police policies and actions in general

25. Defendant Rogers failed to intervene and stop this constitutional violation as he was the supervisor on scene. Instead joined in the conspiracy by unlocking the plaintiff's automobile and searching it without a warrant. Defendants Rogers and LeBeau acting in concert, then kidnapped Lyons, and towed  Lyons's automobile. Which was locked and on a private parking lot, two blocks from his mother home.

26. In addition, LeBeau and Rogers conspired to violate Lyons's constitutionally protected First Amendment  to freedom of expression for visibly displaying his raised extended middle finger out of the driver's side window toward defendant LeBeau.

27. LeBeau attacked Lyons in retaliation for displaying his raised middle finger, causing Lyons to defend himself and nothing more. (See plaintiff's exhibit 4)

28. Plaintiff was maliciously charged with a violation of California penal code 69 and 241(c)

29. The charges are not supported by any true and accurate facts. As the plaintiff only was defending himself from a road raging men with a gun.

30. The traffic stop and criminal charges are an adverse action taken
against Lyons for exercising his First Amendment right to express disapproval of, and disagreement with, the Plaintiff raising his extended middle finger in protest of law enforcement in general for their continued unconstitutional actions.

31. This Malicious prosecution is still ongoing with the State.

Count One—First Amendment Retaliation
(42 U.S.C § 1983)

32. Plaintiff Lyons  incorporates by reference complaint paragraphs
one through thirty-one, as set forth fully here.

33. Defendant LeBeau acted under color of state law by prohibiting Lyons  from engaging in peaceful protest and retaliated for the exercise of that right.

34. Defendant LeBeau acted under the color of law by stopping Lyons  automobile and attempting to issuing him a traffic citation.

35. Plaintiff Lyons peaceful protest raising his middle finger has First Amendment protection as an expression of speech.

36. Plaintiff Lyons had a clearly established constitutional right to express his disapproval of, and disagreement with, law enforcement presence.

38. Defendant LeBeau's use of excessive physical force to enforce a traffic infraction without probable cause or a warrant against Plaintiff Lyons, was an adverse action taken in retaliation for his exercise of constitutionally protected symbolic speech and expression.

39. Defendants LeBeau's motive for the traffic stop and attempted issuance of a traffic ticket was to punish Plaintiff Lyons for exercising rights secured under the constitution. Meaning he was acting under the color of law, outside his authority, negating his qualified immunity.

40. The adverse actions taken against Plaintiff Lyons —stopping his automobile without reasonable suspicion or probable cause of a crime, would substantially interfere with the exercise of First Amendment freedoms by deterring a person of ordinary firmness from further expressing disapproval and disagreement with law enforcement agents conduct in the State of California, through speech and symbolic gesture.

41. As a direct and proximate result of Defendants' violations of the First Amendment, Plaintiff Lyons has suffered irreparable harm, including the loss of his clearly established fundamental constitutional right to free speech and expression, entitling him to declaratory and injunctive relief and damages.

Count Two—Fourth Amendment
(42 U.S.C. § 1983; Unlawful Detention and Seizure)

42. Plaintiff Lyons incorporates by reference complaint paragraphs one through forty-one, as set forth fully here.

43. Defendants LeBeau stopped Plaintiff Lyons automobile , without probable cause or reasonable suspicion to believe a crime had occurred or criminal conduct was afoot.

44. The traffic stop by Defendant LeBeau acting under color of state law, was an unlawful detention and seizure under the Fourth Amendment that interfered with Plaintiff Lyons's liberty interests—restraining his freedom of movement—, further causing him physical injury and property loss.

45. Defendant LeBeau's initiated a traffic stop by activating emergency lights on a state-owned police vehicle directly behind Plaintiff Lyons's automobile was a show of authority for an unlawful reason.

46. Plaintiff Lyons Fourth Amendment rights were sufficiently clear that LeBeau knew his detention and seizure of his person and automobile, without probable cause or reasonable suspicion of a crime, was unconstitutional arbitrary, and oppressive conduct.

47. As a direct and proximate result of Defendant LeBeau's unlawful seizure of Lyons's person and automobile, Plaintiff Lyons has suffered irreparable harm, including the loss of his fundamental liberty interests entitling him to declaratory and injunctive relief and damages.

Count Three—Substantive Due Process
(42 U.S.C. § 1983; Fundamental Liberty)

48. Plaintiff Lyons incorporates by reference complaint paragraphs one through forty-seven., as set forth fully here.

49. This count is cumulative and raised in the alternative, to the preceding First and Fourth Amendment claims made applicable to the states through the Fourteenth

Amendment Due Process Clause.

50. The fundamental right to liberty without arbitrary governmental interference is a protected right, deeply rooted in our country's concepts of decency, history, and tradition.

51. Defendants LeBeau prohibition of Lyons's peaceful protest is abuse of state power that served no government interest, but did interfere with fundamental rights implicit in the concept of ordered liberty.

52. The traffic stop were Defendant LeBeau seized Plaintiff Lyons and his automobile was an arbitrary abuse of state power that served no government interest but did interfere with fundamental rights implicit in the concept of ordered liberty.

53. As a result of Defendants LeBeau and Rogers arbitrary abuse of state power, Plaintiff Lyons lost his freedom of movement, suffered physical injury, and loss of property.

54. Defendants LeBeau had no right to stop Plaintiff Lyons  to exercise his authority for a bruised ego or to chill his peacefully protest.

55. Defendants LeBeau had no legitimate right to stop Plaintiff Lyons  in his automobile and so this exercise of police power was egregious official misconduct that not only derogated a fundamental right but also shocks the conscience.

Count Four— the Fourth Amendment
(42 U.S.C. § 1983; Failure to intervene, Failure to supervise, Failure to train)

56. Defendants Miller, Bullen, and Rogers are supervisory agents, responsible for the actions of their subordinates. Defendants Miller, Bullen, and Rogers  had the power, right, and duty to train and control its officers, agents, and employees to conform to the Constitution of the United States.

57.  Defendants Miller, Bullen, and Rogers
Failed to take disciplinary action against defendant LeBeau after plaintiff Lyons lodged a complaint with the California Highway Patrol's website.

Count five- the Fourth Amendment
(42 U.S.C. § 1983; excessive force)

58. Defendant LeBeau immediately grab the plaintiff for an alleged minor traffic infraction, which is not an arrestable offense.

59. Defendants LeBeau and Coran slammed the plaintiff into the ground. Where they pinned and punch the plaintiff. Not allowing the plaintiff to roll over to be handcuff, instead yelling "stop resisting" so they could deliver more blows.

Count six — the Fifth Amendment
(42 U.S.C. § 1983; Taking clause)

60. Defendants LeBeau and Rogers unlocked and took the plaintiff's automobile from a private parking, without a warrant or exigency.

61.  Plaintiff Lyons sent a demand letter to  defendant Miller seeking the return of his property, with no response.

PRAYERS FOR RELIEF

62. The above paragraphs are repeated and incorporated herein by reference as if set in full.

63. Plaintiff demands judgment against defendants LeBeau, Miller, Rogers, Bullen, Coran, and Gardner, individually, jointly, and/or in the alternative for compensatory damages, punitive

Gardner, individually, jointly, and/or in the alternative for compensatory damages, punitive damages, attorney fees, interest and costs of suit, and such relief as the Court may deem just and equitable.

64. The Plaintiff also seeks this court to remove this case into the federal district court, as the plaintiff is more familiar with the rules and procedures. Furthermore the subject matter of this case is a constitutional question. Finally, the State court has denied the first amendment pleading of the plaintiff, ignored the Graham Factor, and has openly advocated for the police. (see Plaintiff exhibit 4)

65. The plaintiff also request that court recommend this case to the United States Attorney for review and the possible criminal charges of 18 U.S.C § 241,242,2331(5) for all defendants that violated these statutes.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule 38, a trial by jury on all issues.

Joshua Lyons

8/30/23

## LEGAL PRO SE NOTICE   (attachment)

Pro se pleadings are always to be construed liberally and expansively, affording them all opportunity in obtaining substance of justice, over technicality of form. Maty v. Grasselli Chemical

Co., 303 U.S. 197 (1938); Picking v. Pennsylvania Railroad Co., 151 F.2d 240 (3rd Cir. 1945); Jenkins

v. McKeithen, 395 U.S. 411, 421 (1959); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 596, 30

L.Ed.2d 652 (1972); Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972);

Puckett v. Cox, 456 F. 2d 233 (6th Cir. 1972); and, etc., etc., etc., practically ad infinitum.

If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax or sentence construction, or a litigant's unfamiliarity with particular rule requirements. Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70

L.Ed.2d 551 (1982); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); McDowell v. Delaware State Police, 88 F.3d 188, 189 (3rd

Cir. 1996); United States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992); Then v. I.N.S., 58 F.Supp.2d 422, 429 (D.N.J. 1999); and, etc., along with numerous similar rulings.

When interpreting pro se papers, this Court is required to use its own common sense to determine what

relief that party either desires, or is otherwise entitled to. S.E.C. v. Elliott, 953 F.2d 1560, 1582 (11th

Cir. 1992). See also, United States v. Miller, 197 F.3d 644, 648 (3rd Cir. 1999) (court has a special

obligation to construe pro se litigants' pleadings liberally); Poling v. K. Hovnanian Enterprises, 99

F.Supp.2d 502, 506-07 (D.N.J. 2000); and, etc.

Indeed, the courts will even go to particular pains to protect pro se litigants against consequences of technical errors if injustice would otherwise result. U.S. v. Sanchez, 88 F.3d 1243 (D.C.Cir. 1996).

Moreover, "the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." (emphasis added) See, e.g., Bonner v. Circuit Court of St. Louis, 526 F.2d 1331, 1334 (8th Cir. 1975) (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)), and etc

8/30/23

## Applicable law (attachment)

### SB 553 & proposition 47

These two bills set a standard for the disregard of the real crime of theft and shoplifting, throughout the State of California. Yet the police are still enforcing traffic infractions? This is absolutely a violation of equal protections under the law?

### Scruggs v Haynes 252 Cal.App.2d 256 60 Cal.Rptr. 355

"[1] First, it is by no means clear that respondent knew or should have known that he was being arrested; as we have seen, the physical altercation began and ended without anyone telling him that he was under arrest, and no one had accused him of any criminal offense. "
And
"The California cases have consistently held that a peace officer making an arrest is liable to the person arrested for using unreasonable force. ( Appier v. Hayes (1942) 51 Cal.App.2d 111, 116 [ 124 P.2d 125]; Boyes v. Evans (1936) 14 Cal.App.2d 472, 479 [ 58 P.2d 922]; Stowell v. Evans (1931) 211 Cal. 565, 567 [ 296 P. 278]; Lorenz v. Hunt (1928) 89 Cal.App. 6, 10-11 [ 264 P. 336]; Towle v. Matheus (1900) 130 Cal. 574, 577 [ 62 P. 1064]. See Jones v. City of Los Angeles (1963) 215 Cal.App.2d 155, 157-159 [ 30 Cal.Rptr. 124]"

### People v. Curtis, Cr. 12665 74 Cal.Rptr. 71370 Cal.2d 347, 450 P.2d 33

"Supreme Court and this court have distinguished between the "reasonable cause" sufficient for a stop and frisk and the probable cause required for an arrest. (Terry v. Ohio, supra, 392 U.S. at pp. 26-27 [20 L.Ed.2d at pp. 908-909]; People v. Mickelson, supra, 59 [70 Cal. 2d 359] Cal.2d at p. 452.) The stop and frisk rule "wards off pressure to equate reasonable cause to investigate with reasonable cause to arrest, thus protecting the innocent from the risk of arrest when no more than reasonable investigation is justified."

### Robinson v. Solano County, 99-15225 218 F.3d 1030 (2002)

"In this case, it is not alleged that any of the factors justifying the use of force were present.   The crime under investigation was at most a misdemeanor (in this case an infraction);  the suspect was apparently unarmed and approaching the officers in a peaceful way.   There were no dangerous or exigent circumstances apparent at the time of the detention, and the officers outnumbered the plaintiff."

### Duran v. City of Douglas, Ariz., 904 F.2d 1372 (9th Cir. 1990) "In the absence

of a valid warrant, the police may generally not stop and detain an individual for investigation absent a reasonable belief that criminal or otherwise dangerous

activity is afoot. Cortez, 449 U.S. at 417-18, 101 S. Ct. at 694-95."
As well as
**Duran (supra.)**
"The freedom of individuals to oppose or challenge police action verbally without
thereby risking arrest is one important characteristic by which we distinguish
ourselves from a police state. Id. at 462-63, 107 S. Ct. at 2510. Thus, while police,
no less than anyone else, may resent having obscene words and gestures directed
at them, they may not exercise the awesome power at their disposal to punish
individuals for conduct that is not merely lawful, but protected by the First
Amendment."

**Graham v. Connor, 490 U.S. 386 (1989)**
1. Graham factors:
a) the severity of the crime at issue;
b) whether the suspect poses an immediate
threat to the safety of the officers or others; and,
c) whether he is actively resisting arrest or attempting to evade arrest by flight."
"Claims that law enforcement officials have used excessive force in the course of
an arrest, investigatory stop, or other "seizure" of a free citizen are most properly
characterized as invoking the protections of the Fourth Amendment, which
guarantees citizens the right "to be secure in their persons . . . against
unreasonable seizures," and must be judged by reference to the Fourth
Amendment's "reasonableness" standard. Pp. 490 U. S. 394-395."

**United States v. Cortez, 449 U.S. 411 (1981)** "a) In determining what cause is
sufficient to authorize police to stop a person, the totality of the circumstances --
the whole picture -- must be taken into account. Based upon that whole picture,
the detaining
Page 449 U. S. 412
officers must have a particularized and objective basis for suspecting the
particular person stopped of CRIMINAL activity."

**Hill v. City of Houston 789 F.2d 1103 (5th Cir. 1986)** "The first amendment,
which
the Supreme Court has applied to the states through the fourteenth amendment,
Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925),
undoubtedly protects Hill's rights to express publicly his opposition to such police
actions"

**People v Sava 190 Cal.App.3d 935 235 Cal.Rptr. 694** "Further, infractions are
not crimes and the rule forbidding successive prosecutions of a defendant is not
applicable when an infraction is one of the offenses involved. ( People v. Battle
(1975) 50 Cal.App.3d Supp. 1 [123 Cal.Rptr. 636] .) (1b) Proceedings on

infractions are not attended by the same constitutional safeguards as those attending felony or misdemeanor prosecutions. The limitation on an accused's right to jury trial of infractions has withstood constitutional attack upon the rationale the Legislature did not intend to classify infractions as crimes. (See People v. Oppenheimer (1974) 42 Cal.App.3d Supp. 4 [116 Cal.Rptr. 795] and People v. Battle, supra, 50 Cal.App.3d Supp. 1.)

**Robertson vs. Department of Public Works, 180 Wash 133, 147.**  "Complete freedom of the highways is so old and well established a blessing that we have forgotten the days of the Robber Barons and toll roads, and yet, under an act like this, arbitrarily administered, the highways may be completely monopolized, if, through lack of interest, the people submit, then they may look to see the most sacred of their liberties taken from them one by one, by more or less rapid encroachment."

**II Am.Jur. (1st) Constitutional Law, Sect.329, p.1135**
"Personal liberty largely consists of the Right of locomotion -- to go where and when one pleases -- only so far restrained as the Rights of others may make it necessary for the welfare of all other citizens. The Right of the Citizen to travel upon the public highways and to transport his property thereon, by horse drawn carriage, wagon, or AUTOMOBILE, is not a mere privilege which may be permitted or prohibited at will, but the common Right which he has under his Right to life, liberty, and the pursuit of happiness. Under this Constitutional guarantee one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's Rights, he will be protected, not only in his person, but in his safe conduct."

**Hale vs. Hinkel, 201 US 43, 74-75**
"...We are of the opinion that there is a clear distinction in this particular between an individual and a corporation, and that the latter has no right to refuse to submit its books and papers for examination on the suit of the State. The individual may stand upon his Constitutional Rights as a Citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to investigation, so far as it may tend to incriminate him. He owes no such duty to the State, since he receives nothing therefrom, beyond the protection of his life, liberty, and property. His Rights are such as the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his Rights are the refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under warrant of law. He owes nothing to the public so long as he

does not trespass upon their rights.

"Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. It receives certain special privileges and franchises, and holds them subject to the laws of the state and the limitations of its charter. Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers. It would be a strange anomaly to hold that the State, having chartered a corporation to make use of certain franchises, could not in exercise of its sovereignty inquire how those franchises had been employed, and whether they had been abused, and demand the production of corporate books and papers for that purpose."

### Arizona v. Gant, 556 U.S. 332 (2009)

"Police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest."

### Florida v. Bostick, 501 U.S. 429 (1991)

The Fourth Amendment forbids "unreasonable" searches and seizures. When the police detain a person for any length of time, it is a "seizure" within the meaning of the Fourth Amendment. The Court has found not all seizures to be unreasonable, and much Fourth Amendment law consists of explaining what makes certain governmental actions "unreasonable."

### Murdock v Pennsylvania 319 U.S. 105 (1943)

a State may not impose a charge for the enjoyment of a right granted by the Federal Constitution. "The power to impose a license tax on the exercise of these freedoms is indeed as potent as the power of censorship which this Court has repeatedly struck down,".

### Byrd v. Brishke, 466 F.2d 6 (7th Cir. 1972) "an officer who knows about the unlawful conduct and has a realistic opportunity to intervene and prevent harm from occurring is liable"

### Malley v. Briggs, 475 U.S. 335 (1986)

"As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question."

8/30/23

**CASH BOND**                                      AGENCY#: 202201480 / CHPR

RECOMMENDED

DEF#1 $10,000.00

DEF#1 Bailed: 02/21/2023

MICHAEL A. HESTRIN

DISTRICT ATTORNEY

## Plaintiff exhibit #1

SUPERIOR COURT OF CALIFORNIA

COUNTY OF RIVERSIDE

(Riverside)

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | D.A.#: |
| | CASE NO. |
| | FELONY COMPLAINT |
| Plaintiff, | |
| v. | |
| JOSHUA L. LYONS | |
| ▮▮▮▮▮▮▮ | |
| ▮▮▮▮▮▮▮▮▮▮▮ | |
| DOB: ▮▮▮▮▮ | |
| BOOKING#: ▮▮▮▮▮ | |
| Defendant. | |

### COUNT 1

The undersigned, under penalty of perjury upon information and belief, declares: That the above named defendant(s) JOSHUA L. LYONS committed a violation of Penal Code section 69, a felony, in that on or about December 22, 2022, in the County of Riverside, State of California, the defendant(s) did willfully and unlawfully attempt by means of threats and violence to deter and prevent CHP OFFICER ▮▮▮▮▮▮, who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of their duty. [16/2/3]

### COUNT 2

That the above named defendant(s) JOSHUA L. LYONS committed a violation of Penal Code section 241, subdivision (c), a misdemeanor, in that on or about December 22, 2022, in the County of Riverside, State of California, the defendant(s) did willfully and unlawfully

1

commit an assault against CHP OFFICER ▮▮▮▮▮ a peace officer, firefighter, emergency medical technician, mobile intensive care paramedic, lifeguard, process server, traffic officer, code enforcement officer, animal control officer and search and rescue member, engaged in the performance of their duties and a physician and nurse engaged in rendering emergency medical care outside a hospital, clinic, and other health care facility, while the defendant(s) knew and reasonably should have known that the person assaulted was a peace officer, firefighter, emergency medical technician, mobile intensive care paramedic, lifeguard, process server, traffic officer, code enforcement officer, animal control officer and search and rescue member engaged in the performance of their duties, and physician and nurse engaged in rendering emergency medical care. [1yr.]

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution, Article 1, Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It may be unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law.

## DISCOVERY REQUEST

Pursuant to Penal Code section 1054.5, subdivision (b), the People are hereby informally requesting that defense counsel provide discovery to the People as required by Penal Code section 1054.3.

I declare under penalty of perjury upon information and belief under the laws of the State of California that the foregoing is true and correct.

Dated: December 28, 2022

MICHAEL A. HESTRIN
District Attorney

By: William E. Robinson
Deputy District Attorney

2

STATE OF CALIFORNIA

DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

**ARREST – INVESTIGATION REPORT**

CHP 216 (Rev. 10-21) OPI 061

☐ DOMESTIC VIOLENCE (REFER TO HPM 100.69)　☐ MISSING PERSON (REFER TO HPM 100.69)　☐ HATE CRIME (REFER TO HPM 100.69)　PAGE 1 OF 11

☐ Misdemeanor　☒ Felony　☐ Other

COURT: RIVERSIDE SUPERIOR

FILE NUMBER: 20220 1480

EVIDENCE/PROPERTY: ☐ YES ☒ NO

AREA: 840　BEAT: 004　CRASH REPORT NUMBER: N/A

| DATE/TIME OF ARREST REPORT | DATE/TIME OF INCIDENT | ☒ SAME | LOCATION OF ARREST/INCIDENT | WMVARS/MVARS ☒ YES ☐ NO |
|---|---|---|---|---|
| 12/22/2022  1243 | | | Van Buren Blvd, Riverside, Ca 92504 | 24 |

| CAD NUMBER | ☐ NONE | CITATION NUMBER | OFFENSE(S) CHARGED OR INVESTIGATED | JUS 8715 REQUIRED ☒ YES ☐ NO |
|---|---|---|---|---|
| 221222IN00516 | | F-549-840-22 | 69 (a) PC, 241 (c) PC | NUMBER |

**SUBJECT NO 1 OF 1**

NAME (last, first, middle): Lyons, Joshua

RESIDENCE ADDRESS: Pierce Street, Wheat Ridge, Co 80033

AKA:

HOME PHONE: ▮▮▮

MAILING ADDRESS: ☒ SAME

RACE: White　ETHNICITY: Not Hispanic or Latino　SEX: Male　BIRTHDATE: ▮▮

DISPATCH NOTIFIED ☒ YES ☐ NO

DRIVER LICENSE NUMBER: ▮　STATE: CO　DDL STATUS: Expired　HAIR: XXX　EYES: BLU　HEIGHT: 508　WEIGHT: 200　PLACE OF BIRTH (city, state, country):

TIME 1253

EMPLOYER:　BUSINESS PHONE:　BUSINESS ADDRESS:　MISC. (SSN, INS #, ETC.):

ID: ▮

BOOKING, CII, FBI, ETC., NUMBER(S): Booking#202251273

WHERE BOOKED/CONFINED: ROBERT PRESLEY DETENTION CENTER

DATE/TIME: 12/22/2022  1555

FINGERPRINTED ☒ YES ☐ NO

NOTIFICATION (Who, How, When), EXPLAIN IN NARRATIVE

☐ JUVENILE　☐ FOREIGN NATIONAL　☐ IMMUNITY CLAIM

NOTIFIED BY

**VEHICLE**

LICENSE: ▮　STATE: CO　REG. YEAR: 2019　VIN/EN NUMBER: ▮

VEHICLE WAS ☒ STORED　☐ PARKED　☐ RECOVERED　☐ RELEASED　☐ IMPOUNDED

STORAGE AUTHORITY: 22651 (H) VC

VEH YEAR: ▮　MAKE: CHEVROLET　MODEL: SILVERADO　COLOR: WHITE　BODY TYPE: PICKUP

LOCATION OF VEHICLE/RELEASED TO/ADDRESS/TELEPHONE NUMBER: LAWALERS TRIPLE L▮

NAME OF REGISTERED OWNER: ☒ SAME AS SUBJECT

ADDRESS: PIERCE STREET, WHEAT RIDGE, CO 80033　☐ SAME AS SUBJECT

NAME OF LEGAL OWNER: TOYOTA MOTOR CREDIT CORP　☐ SAME AS R/O

ADDRESS: PO BOX 105386, ATLANTA, GA, 30348

LOCATION OF KEYS:

**WITNESS/PASSENGER**

| BIRTHDATE | SEX | NAME | ☒ WITNESS ☐ PASSENGER | ADDRESS/AGENCY | PHONE |
|---|---|---|---|---|---|
| ▮ | F | ▮ | ☒ WITNESS ☐ PASSENGER | Olive Ave, Riverside, Ca 92504 | RES ▮ BUS |
| ▮ | M | ▮ | ☒ WITNESS ☐ PASSENGER | Van Buren Blvd, Riverside, Ca 92504 | RES ▮ BUS |
| | | | ☐ WITNESS ☐ PASSENGER | | RES BUS |
| | | | ☐ WITNESS ☐ PASSENGER | | RES BUS |
| | | | ☐ WITNESS ☐ PASSENGER | | RES BUS |

**VICTIM INFORMATION**

1. NAME:　ADDRESS:

BIRTHDATE:　SEX:　DRIVER'S LICENSE:　STATE:　DAY PHONE:　EVENING PHONE:

VEH. LIC. #:　STATE:　YEAR:　MAKE:　MODEL:　COLOR:　BODY TYPE:

2. NAME:　ADDRESS:

BIRTHDATE:　SEX:　DRIVER'S LICENSE:　STATE:　DAY PHONE:　EVENING PHONE:

VEH. LIC. #:　STATE:　YEAR:　MAKE:　MODEL:　COLOR:　BODY TYPE:

**MISDEMEANOR INCARCERATION** (To be completed upon physical arrest for any misdemeanor, pursuant to Section 853.6 of the Penal Code.)

As determined by the arresting officer, the person arrested

1. ☐ was so intoxicated as to be a danger to themself or others.
2. ☐ required medical examination or medical care or was otherwise unable to care for their own safety.
3. ☐ was arrested under one or more of the circumstances listed in Sections 40302 and 40303 of the California Vehicle Code (Note 5 and 8 if also applicable).
4. ☐ had one or more outstanding arrest warrants issued.
5. ☐ could not provide satisfactory evidence of personal identification.
6. ☐ if released immediately, would jeopardize the prosecution of the offense or offenses for which arrested or the prosecution of any other offenses.
7. ☐ would be reasonably likely to continue the offense or offenses, or the safety of persons or property would be imminently endangered if immediately released.
8. ☐ demanded to be taken before a magistrate or refused to sign the citation.
9. ☐ would not appear at the time and place specified in the notice.
10. ☐ Other:

| ARRESTING/INVESTIGATING OFFICER (Print name/rank) | ID NUMBER | REVIEWED BY (Print name/rank) | ID NUMBER | DATE |
|---|---|---|---|---|
| N. LE BEAU/ OFFICER | 21831 | Rogers　Sgt | 16174 | 12/23/22 |

Destroy Previous Editions　　An Internationally Accredited Agency　　Chp216_1221.pdf

Lyons, Joshua  F-549-840-22

LAST NAME, FIRST NAME, AND MIDDLE INITIAL

LAST NAME, FIRST NAME, AND MIDDLE INITIAL                    CITATION/CASE NUMBER                    PAGE   2   OF   11

Lyons, Joshua

## ARREST — INVESTIGATION REPORT NARRATIVE (CONTINUED)

### ADMONITION OF RIGHTS

| 1. YOU HAVE THE RIGHT TO REMAIN SILENT.<br><br>2. ANYTHING YOU SAY CAN AND WILL BE USED AGAINST YOU IN A COURT OF LAW. | 3. YOU HAVE THE RIGHT TO TALK WITH AN ATTORNEY AND TO HAVE AN ATTORNEY PRESENT BEFORE AND DURING QUESTIONING. | 4. IF YOU CANNOT AFFORD AN ATTORNEY, ONE WILL BE APPOINTED FREE OF CHARGE TO REPRESENT YOU BEFORE AND DURING QUESTIONING, IF YOU DESIRE. |
|---|---|---|

THE ABOVE STATEMENT WAS READ TO THE ARRESTEE BY
[X] NOT ADVISED                    [ ] ARRESTING OFFICER        [ ] OR:                                        ID                TIME

| DO YOU UNDERSTAND EACH OF THESE RIGHTS I HAVE EXPLAINED TO YOU?<br><br>[ ] YES   [ ] NO | HAVING THESE RIGHTS IN MIND, DO YOU WISH TO TALK TO US NOW?<br>[ ] YES   [ ] NO | WAIVER STATEMENT |
|---|---|---|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE



**ARREST/ INVESTIGATIVE REPORT**              **Case: F549-840-22**

## I.    CASE IDENTIFICATION:

| | |
|---|---|
| **Case number:** | F549-840-22 |
| **Date / time of incident:** | December 22, 2022/ 1249 |
| **Suspect(s):** | Joshua Lyons |
| **Charges:** | 69 (a) PC and 241 (c) PC |
| **Location:** | ▮▮▮▮ Van Buren Boulevard, Ca 92504 |



| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE

**ARREST/ INVESTIGATIVE REPORT**                                    Case: F549-840-22



II.     **CASE INDEX:**                                           PAGE

I.   Case Identification                                    3

II.  Case Index                                             4

III. Suspect Identification                                 5

IV.  Summary                                                7

V.   Statements                                             8

VI.  Agencies Involved                                      9

VII. Analysis and Opinions                                  10

VIII. Recommendations                                       11

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE

**ARREST/ INVESTIGATIVE REPORT**                                    Case: F549-840-22

## III.   SUSPECT IDENTIFICATION:



Name:                    Joshua Lyons

Date of Birth            ████████

Residence Address:       ████ Pierce Street, Wheat Ridge, Co 80033

License (State):         ████████

Social Security Number:  ████████

Booking information:     RPDC - 202251273

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE



**ARREST/ INVESTIGATIVE REPORT** _____   Case: **F549-840-22**

## IV.   SUMMARY:

On December 22, 2022, at approximately 1242 hours, I was on duty driving a fully marked CHP patrol vehicle and in full CHP uniform.  While driving southbound on Washington Street, south of Van Buren Boulevard my attention was drawn to a white Chevrolet Silverado.  I observed the driver of the Chevrolet was flipping me off.  Initially I thought I knew the person driving the Chevrolet and did not pay much attention.  As I passed the Chevrolet, I observed the vehicle did not have a rear license plate a violation of California Vehicle code section 5200 (a).  I made a U-turn and positioned my patrol vehicle behind the Chevrolet.  The vehicle turned left into the parking lot on the northeast corner of Van Buren Boulevard and Washington Street.  I activated my forward-facing emergency lights to conduct an enforcement stop.  The Chevrolet yielded and came to a stop in a parking stall in front of the Stater Bro's.  As I exited my patrol vehicle, the driver (later identified as Joshua Lyons with a ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓) of the Chevrolet quickly exited his vehicle and began to walk towards me aggressively and tensed up, and I ordered Lyons to stay in his vehicle.  At this point Lyons was standing approximately three feet from me.  Based upon Lyons aggressive demeanor and his actions, I was unsure whether he was armed and intended on attempting to harm me. I attempted to control him by placing my left hand on his right arm.  Lyons immediately tensed up and pushed my arms away.  I once again attempted to gain control of Lyons by trying to control both of his arms with my hands.  Lyons swung his right closed fist and struck me in the left side of my head. Lyons wrapped his arms around my neck and head area in a guillotine style choke hold.  I grabbed Lyons' legs and took him down to the ground in a supine position.  Once on the ground, Lyons kept his arms around my neck and began to tighten his arms and bow his back to choke me.  I began to feel the tension on my neck and momentarily had trouble breathing.  In fear for my life, I began to deliver multiple closed fist strikes to his lower torso in an attempt to escape his choke hold and to gain compliance. I was able to separate his arms from around my neck. I moved into a mounted position on Lyons, and he continued to resist by turning to his side and holding

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE

## ARREST/ INVESTIGATIVE REPORT

Case: F549-840-22



his arms underneath him and tensing his body. With the help from bystanders, I was able to place Lyons into a prone position and gain control of him, placing him in handcuffs. I placed Lyons under arrest for violation of California Penal Code Sections 69 (a) and 241 (c). Emergency medical personnel was immediately called to the scene to evaluate Lyons.

While waiting for emergency medical personnel, I attempted to confirm the identity of the driver. He stated, "I'm not telling you ▮▮▮ shit, how about that. Figure it out dude, do your ▮▮▮ job."

Upon emergency medical personnel's arrival, Lyons declined to be evaluated.

While conducting a vehicle inventory of the Chevrolet Silverado, Officer Diaz located a large-fixed blade knife between the driver seat and the center console.

A tow truck was called, and the Chevrolet Silverado was stored with Lawler's Triple L Towing.

Lyons was transported to the Riverside CHP Area office to be interviewed and completed paperwork. Lyons refused to speak with me regarding the incident.

After completing paperwork, Lyons was then transported to the Robert Presley Detention Center. After being cleared by medical staff, Lyons was subsequently booked without further incident. (Booking# 202251273)

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE

**ARREST/ INVESTIGATIVE REPORT**                                           Case: F549-840-22



A criminal history check on Lyons through CLETS revealed on various occasions Lyons has been arrested for similar incidents (obstructing peace officers, resisting arrest, disturbing the peace, and evading police) in Texas, Colorado, and California.

## V.   STATEMENTS:

CHP Sergeant C. Bullen, #14640, contacted two witnesses on scene. The first was identified as ▇▇▇▇▇▇ (California Driver License# ▇▇▇▇▇▇ The second was identified as ▇▇▇▇▇▇ (Date of birth ▇▇ ▇ ▇▇ I attempted to contact Timothy Cronan via telephone, but he did not answer. If a statement is obtained in the future it will be added to a supplemental report.

On December 23, 2022, at approximately 0805 hours, I contacted ▇▇▇▇▇▇ via telephone. When ▇▇▇▇▇▇ answered the phone, I identified myself and she immediately asked if I was okay. ▇▇▇▇▇▇ provided the following statement.

### Susan Gardner

I was walking to my car, but you had pulled over the gentleman in the white pickup right next to me. I couldn't go so I stood there while you guys were parking. Then the guy jumped out of his truck, and you told him stay in your truck and he continued to walk towards you saying, "why did you pull me over!". You said please go back to your truck and that's when he pushed you and then started punching you. You guys were fighting for a while and then you were able to push him to the ground and then the guys around the Stater Brothers were able to help you and arrest him. You guys were fighting for a while until you were able to gather yourself because it looked like you weren't prepared for him to start pounding on you. He was fighting with you, and you were trying to

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE

**ARREST/ INVESTIGATIVE REPORT**                    Case: F549-840-22



defend yourself and trying to put him into an arrest. Then eventually you were able to contain yourself and get his legs. When you pushed him to the ground, he hit his head and I heard that. The man was very angry for some reason, and it was not a normal way to act. He jumped right out of his truck and started saying, "What are you stopping me for!" Then he started walking towards you pretty fast and you told him to get back into his truck and then he came up to you and started pounding on you.

VI.    **AGENCIES INVOLVED:**

1.  California Highway Patrol

    Riverside Area office

    8118 Lincoln Ave

    Riverside, CA 92504

    - Sergeant P. Rogers, #16174- Supervisor
    - Sergeant C. Bullen, #14640-Supervisor
    - Officer N. Le Beau, #21831 – Investigating Officer
    - Officer R. Diaz, #14916- Assisting Officer
    - Officer E. Shumaker, #18512- Assisting Officer

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE



**ARREST/ INVESTIGATIVE REPORT**                          Case: F549-840-22

## VII.   ANALYSIS AND OPINIONS:

- 69 (a) PC-Resisting an Executive Officer

Joshua Lyons was in violation of this section by intentionally using force and violence to prevent a peace officer from performing a lawful action and should have reasonably known I was a peace officer.

- 241 (c) PC- Assault on a Peace Officer

Joshua Lyons was in violation of this section based on striking a peace officer with a closed fist. Joshua Lyons also placed a peace officer in a choke hold while continuing to resist arrest.

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL
RIVERSIDE AREA OFFICE



**ARREST/ INVESTIGATIVE REPORT**                                    Case: F549-840-22

## VIII.  RECOMMENDATIONS:

I recommend this case be forwarded to the Riverside County District Attorney's Office for review and determination of whether the actions displayed by **Joshua Lyons** rises to the level which warrants criminal prosecution for the following violations:

1. **69 (a) PC-Resisting an Executive Officer**
2. **241 (c) PC- Assault on a Peace Officer**

| PREPARED BY | I.D. | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| N. Le Beau | 21831 | 12-22-2022 | | |

*Plaintiff exhibit 4*

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 1

1            SUPERIOR COURT - STATE OF CALIFORNIA

2                 COUNTY OF RIVERSIDE

3                    -oOo-

4   PEOPLE OF THE STATE OF CALIFORNIA,  )

5                Plaintiff,  )

6   vs.  )    Case No. RIF2206272

7   JOSHUA L. LYONS,  )

8                Defendant.  )

9   _____)

10

11        REPORTER'S TRANSCRIPT OF PRELIMINARY HEARING

12    BEFORE THE HONORABLE CHARLES J. KOOSED - DEPARTMENT 54

13               JUNE 28, 2023

14

15   APPEARANCES:

16   For the Plaintiff:      OFFICE OF THE DISTRICT ATTORNEY
                        BY:  CHRIS JUSUF

17                        3960 Orange Street
                        Riverside, California  92501

18
   For the Defendant:      OFFICE OF THE PUBLIC DEFENDER

19                        By:  CYNTHIA SIU
                        4075-A Main Street

20                        Riverside, California 92501

21

22

23   Copy

24        **CERTIFIED**

25        **TRANSCRIPT**

26        Copy

27   Reported by:

28

*All Highlighted Areas are Relavant to Federal Removal*



PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 2

1                          INDEX - VOLUME 1

2                            (Pages 1-37.)

3                          SESSIONS INDEX

4

5  JUNE 28, 2023                                          PAGE
            Morning Session                               5
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Superior Court of the State of California
County of Riverside

07-07-2023 9:02AM

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 3

1                       CHRONOLOGICAL INDEX OF WITNESSES

2   PLAINTIFF'S WITNESSES:                               PAGE

3   NIKO LE BEAU

4       Direct Examination by Mr. Jusuf          6
          Cross-Examination by Ms. Siu          12

5       Redirect Examination by Mr. Jusuf      20
          Recross-Examination by Ms. Siu        20

6       Further Redirect Examination by Mr. Jusuf  22
          Further Recross-Examination by Ms. Siu   23

7       Examination by The Court            25
          Further Recross-Examination by Ms. Siu   27

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Superior Court of the State of California
County of Riverside

07-07-2023 9:02AM

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 4

1              **EXHIBITS**

2

3  DEFENDANT'S EXHIBITS:

4  NO.              DESCRIPTION                    ID.      EVD.

5  A                Video                          18       29

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Superior Court of the State of California
County of Riverside

07-07-2023 9:02AM

PEOPLE vs JOSHUA L. LYONS                                                    Page 5
RIF2206272

1                    JUNE 28, 2023 - MORNING SESSION
2             BEFORE THE HONORABLE CHARLES J. KOOSED
3             THE COURT:  Calling People vs. Joshua Lyons, RIF ending
4     -272.  There is also a trailing misdemeanor violation of
5     probation, looks like.
6             Is that being heard concurrently with the prelim?
7             MS. SIU:  Yes.  That's fine.
8             MR. JUSUF:  Yes, your Honor.
9             THE COURT:  Okay.  We'll note the VOP is being heard
10    currently with the prelim.
11            Appearance for the record, please.
12            MR. JUSUF:  Chris Jusuf for the People.
13            MS. SIU:  Cynthia Siu for Mr. Lyons.  Mr. Lyons is
14    present out of custody seated next to me at counsel table.
15            THE COURT:  Matter has been assigned here for
16    preliminary hearing along with the violation of probation
17    hearing as to case RIM ending -787.
18            Both sides ready to proceed?
19            MR. JUSUF:  People are ready.
20            MS. SIU:  Defense is ready.
21            THE COURT:  Anything either side wishes to discuss
22    before commencing prelim?
23            MR. JUSUF:  Not from the People, your Honor.
24            MS. SIU:  No, your Honor.
25            THE COURT:  Call your first witness.
26            MR. JUSUF:  People call Niko Le Beau of the CHP.
27            THE CLERK:  Please raise your right hand.
28            You do solemnly state that the testimony you shall give

1  in the matter now pending before this Court shall be the truth,

2  the whole truth, and nothing but the truth, so help you God?

3          THE WITNESS:  Yes, I do.

4          THE CLERK:  Thank you.

5          Please be seated, sir.

6          Speaking clearly into the microphone, please state and

7  spell your full name.

8          THE WITNESS:  Good morning, your Honor.

9          THE COURT:  Good morning.

10         THE WITNESS:  Niko, N-i-k-o, L-e, space, capital

11 B-e-a-u.

12         THE COURT:  You may inquire.

13         MR. JUSUF:  Thank you, your Honor.

14                   NIKO LE BEAU,

15 called as a witness by the plaintiff, was sworn and testified as

16 follows:

17                 DIRECT EXAMINATION

18 BY MS. SIU:

19    Q.   Good morning, Officer.

20    A.   Good morning.

21    Q.   Officer, what do you do for a living?

22    A.   I work for the California Highway Patrol.

23    Q.   How long have you been a peace officer?

24    A.   Six years.

25    Q.   All right.  On -- were you working as a peace officer

26 on December 22, 2022, around 12:42 p.m.?

27    A.   Yes, I was.

28    Q.   And on that date and time were you on patrol in the

1  area of Washington Street and Van Buren Boulevard?

2      A.   Yes.

3      Q.   Is that location in the county of Riverside?

4      A.   Yes.

5      Q.   What did you observe on that date at that time?

6      A.   As I was traveling northbound on Washington from Van

7  Buren, I observed a white pickup truck in the southbound lanes.

8  I observed a gentleman that flipped me off as I was passing.

9  Initially I thought it was somebody that I knew, but as I

10  passed, I observed the vehicle had no plates on it.

11     Q.   When you saw the vehicle had no plates on it, what did

12  you decide to do?

13     A.   I decided to position my patrol car behind the vehicle

14  and initiate an enforcement stop.

15     Q.   Did the -- did this vehicle comply with the enforcement

16  stop?

17     A.   Yeah.  As the vehicle -- vehicle turned into the

18  parking lot, on the northeast corner of Van Buren and Washington

19  and I turned on lights and he seemed to yield.

20     Q.   And where did this vehicle stop?

21     A.   Within a parking stall in front of the Stater Bros.

22  there in the parking lot.

23     Q.   Where was your vehicle positioned when you initiated

24  the stop or when you -- when the other vehicle stopped?

25     A.   Behind the vehicle.

26     Q.   Okay.  And what did you decide to do at this point?

27     A.   Exit my patrol vehicle.

28     Q.   When you exited the patrol vehicle, what happened?

PEOPLE vs JOSHUA L. LYONS
RIF2206272
Page 8

1      A.    The gentleman inside of the vehicle also exited his
2  vehicle and began to walk towards me.
3      Q.    Was this gentleman in the driver's seat?
4      A.    Yes.
5      Q.    And do you recognize the gentleman in this courtroom
6  here today?
7      A.    Yes.
8      Q.    Can you please point and identify a piece of clothing
9  he is wearing?
10     A.    He's sitting next to defense counsel in the blue shirt.
11     Q.    All right.  May the record reflect the witness has
12  identified the defendant?
13           THE COURT:  Record will so reflect.
14     Q.    BY MR. JUSUF:  And what was the defendant's demeanor
15  when he exited the vehicle?
16     A.    Aggressive manner walking quickly towards me.
17     Q.    But walking in your direction?
18     A.    Yes.
19     Q.    Did you give him any directions at that point?
20     A.    I said stay in his vehicle.
21     Q.    Did he comply with the directions?
22     A.    No.
23     Q.    And so what happened next?
24     A.    He -- he began to yell, Why did you pull me over?  I
25  told him stay in his vehicle again.  Not knowing what his
26  intention was, I tried to gain control of him, and then he
27  quickly tensed up and pushed my arms away.
28     Q.    All right.  And when you first contacted him, where

1   was -- were his hands positioned?

2       A.   At his side.

3       Q.   Okay.  But he was acting aggressively you said?

4            MS. SIU:  Objection.  Facts not in evidence.

5            THE COURT:  He said walking aggressively towards you,

6   is that what you said?

7            THE WITNESS:  Yes.

8            THE COURT:  All right.  Overruled.

9       Q.   BY MR. JUSUF:  So he was acting -- behaving

10  aggressively?

11      A.   Yes.

12           THE COURT:  The problem is when you say that, I don't

13  know when that occurred in time.  So all you have right now is

14  that he was walking aggressively towards him.

15           MR. JUSUF:  Yes, your Honor.

16           THE COURT:  If you want to get into whether he was

17  aggressive beyond that, then you can ask him that question.

18      Q.   BY MR. JUSUF:  Yes, your Honor.

19           And, Officer, when you tried to take control of the

20  defendant's arms, what happened?

21      A.   He immediately tensed up and pushed my arms away.

22      Q.   What happened next after that?

23      A.   I tried to regain control of him.  He then swung his

24  right closed fist, which hit me in the left side of my head.

25      Q.   All right.  And then what did you decide to do at that

26  point?

27      A.   Grabbed him at the waist and he grabbed me and put me

28  in a choke hold.

PEOPLE vs JOSHUA L. LYONS
RIF2206272                                                                         Page 10

1       Q.    And when he -- when you were in this choke hold, did
2   you feel him squeeze against you?
3       A.    Initially, no.  I was able to grab his legs and take
4   him to the ground.  Once on the ground, that's when I felt him
5   tightening his arms and bowing his back.
6       Q.    And to clarify.  Was he tightening his arms around your
7   neck?
8       A.    Yes.
9       Q.    At any point did you have trouble breathing?
10      A.    For a short period of time, yes.
11      Q.    And when that happened, what did you do?
12      A.    I began to deliver distraction strikes with my right
13  closed fist to his torso and put my left hand to his face to
14  loosen his grip.
15      Q.    And while you were doing this, were you giving him any
16  instructions?
17      A.    Because of the way his arms were positioned around my
18  neck, I wasn't able to.
19      Q.    And okay.  Did he continue to resist as you were
20  delivering these distraction blows?
21      A.    He continued to tense up and keep his arms from me
22  being able to gain control of him.
23      Q.    Okay.  And then were there any bystanders in the area
24  during this interaction?
25      A.    Yes.  There were, I think, two or three bystanders.
26      Q.    Did any of these bystanders get involved?
27      A.    Yes.
28      Q.    How did they get involved?

1    A.    One positioned himself near the defendant's head and
2   another his legs.
3    Q.    And what were they doing?
4    A.    They were telling him to calm down and comply and
5   holding him down.
6    Q.    All right.  Were you eventually able to detain the
7   defendant?
8    A.    Yes.
9    Q.    After you detained the defendant, what did you do?
10   A.    I detained, I placed him in handcuffs, tried to sit him
11   up and called for an ambulance.
12   Q.    All right.  And did an ambulance arrive?
13   A.    Yes.
14   Q.    Did he request any medical attention from the
15   ambulance?
16   A.    He refused.
17   Q.    Did you make contact with a woman Susan Gardner?
18   A.    Yes.
19   Q.    And who is Susan Gardner?
20   A.    One of the bystanders in front of Stater Bros. that
21   witnessed the incident.
22   Q.    Did you conduct an interview with Ms. Gardner?
23   A.    Yes.
24   Q.    What did she say she observed on that day?
25   A.    Ms. Gardner related she was walking through the parking
26   lot when she saw me initiate a traffic stop on a white Chevy
27   pickup driven by a gentleman.  She had to stop because we parked
28   in front of her.  And as I got out of the car, she said she saw

PEOPLE vs JOSHUA L. LYONS                                    Page 12
RIF2206272

1  the gentleman get out of the car and started to yell why did you

2  pull me over and was walking towards me angrily.

3      Q.   And what did she say happened when you attempted to

4  gain control of the defendant?

5          MS. SIU:  Objection.  Relevance.  She's a bystander.

6  The officer testified to his conduct, Mr. Lyons' conduct.

7          THE COURT:  Overruled.

8          MR. JUSUF:  You can answer the question.

9          THE WITNESS:  She said that he started to push me and

10 punch me.  And then it seemed as if I wasn't ready for what he

11 was doing.  And then I was able to gather myself and take him to

12 the ground.

13         MR. JUSUF:  No further questions at this time, your

14 Honor.

15         THE COURT:  Cross?

16         MS. SIU:  Yes.

17                    CROSS-EXAMINATION

18 BY MS. SIU:

19     Q.   Good morning, Officer.

20     A.   Good morning.

21     Q.   When you first gave Mr. Lyons commands to get back in

22 the car he was physically fully outside of the car, correct?

23     A.   Yes.

24     Q.   His door was closed?

25     A.   I'm not sure.

26     Q.   At some point was his door closed when -- during your

27 interaction?

28     A.   I think so, yeah.

Superior Court of the State of California
County of Riverside                              07-07-2023 9:02AM

1    Q.   Okay.  And you were both simultaneously getting out of
2  your respective vehicles, correct?

3    A.   I opened the door first, got up, and then he opened his
4  shortly after I was out.

5    Q.   And by shortly after, within moments, seconds, correct?

6    A.   Yeah.

7    Q.   And you said that Mr. Lyons was aggressively walking
8  towards you?

9    A.   Uh-huh.

10    THE COURT:  Wait.  Wait.  "Yes"?

11    THE WITNESS:  Yes.  I'm sorry.

12    Q.   BY MS. SIU:  He wasn't running at you, correct?

13    A.   Correct.

14    Q.   Didn't charge at you?

15    A.   Correct.

16    Q.   He didn't have his fists up?

17    A.   Like in a fighting stance?

18    Q.   Yes.

19    A.   No.

20    Q.   He had his keys in one hand and his phone in another
21  hand, correct?

22    MR. JUSUF:  Objection.  Foundation.

23    THE COURT:  Overruled.  You can answer if you know.

24    THE WITNESS:  Initially I did not know.  After
25  reviewing my body-worn camera, I saw that, but in the moment, I
26  did not know what he had in his hands.

27    Q.   BY MS. SIU:  All right.  But --

28    A.   Yes.

PEOPLE vs JOSHUA L. LYONS
RIF2206272

1   Q.   -- he had items in his hands, both hands?

2   A.   Yes.

3   Q.   And he didn't take a fighting or bladed stance towards

4   you?

5   A.   No.

6   Q.   And he actually stopped walking close to where his gas

7   tank of his truck was, correct?

8   A.   Once I met him.

9   Q.   Okay.  But you actually took two further steps to get

10  closer and close the distance between you and Mr. Lyons,

11  correct?

12  A.   Yes.

13  Q.   And he asked you previously to you closing the

14  distance, he asked why you were there, why you were stopping

15  him, correct?

16  A.   Yes.

17  Q.   You did not -- did not respond about his plates.  You

18  did not respond to his question by saying it was about his rear

19  plate, correct?

20  A.   Correct.

21  Q.   That was the basis of you turning on your lights and

22  sirens?

23  A.   Yes.

24  Q.   You also did not ask him where his plates were,

25  correct?

26  A.   Correct.

27  Q.   You did not ask him if they were in his vehicle?

28  A.   Correct.

PEOPLE vs JOSHUA L. LYONS
RIF2206272                                                                    Page 15

1      Q.    You did not ask him if he had recently purchased the
2  vehicle?

3      A.    Correct.

4      Q.    You did not ask him if he's already received plates
5  from the DMV and they were in the mail, correct?

6      A.    Correct.

7      Q.    All right.  Once you closed the distance you put your
8  hands on Mr. Lyons, correct?

9      A.    Yes.

10     Q.    And it was following that that he kind of did a
11  windmill motion with his arms, correct?

12     A.    Yes.

13     Q.    He did not place hands on you first?

14     A.    No.

15     Q.    He was not yelling at you?

16     A.    He was.

17     Q.    Or yelling what were you doing or why you stopped me,
18  correct?

19     A.    Yes.

20     Q.    He wasn't yelling or calling you names?

21     A.    No.

22     Q.    He was not swearing at you?

23     A.    No.

24     Q.    He was not throwing fists or his arms flailing,
25  correct?

26     A.    No.

27     Q.    Prior to you putting your hand on Mr. Lyons, you didn't
28  ask him for his name?

PEOPLE vs JOSHUA L. LYONS
RIF2206272                                                                    Page 16

```
 1    A.   No.

 2    Q.   Or his license?

 3    A.   No.

 4    Q.   Any registration papers?

 5    A.   No.

 6    Q.   Insurance papers?

 7    A.   No.

 8    Q.   You followed him because he initially flipped you off,
 9  and then that's when you saw he had no rear plates?

10    A.   My attention was drawn to his vehicle after he flipped
11  me off, and that's what made me look at his car.

12    Q.   Okay.  Otherwise he was driving an appropriate speed?

13    A.   He was stopped.

14    Q.   Okay.  Then he was in the appropriate lanes?

15    A.   Yeah.

16    Q.   Stopped properly at whatever stop sign or light or
17  whatever was happening?

18    A.   Yeah.  He was waiting to turn into the parking lot.

19    Q.   Uh-huh.

20    A.   Yeah.

21    Q.   And during -- while -- during the incident, another
22  gentleman I believe wearing black kind of tackled the two of
23  you, correct?

24    A.   No.

25    Q.   How did he -- how did he physically get involved?

26    A.   The gentleman in the black?

27    Q.   Yes.

28    A.   Honestly, are you referring to the person who was
```

1   positioned near the defendant's head?

2      Q.   Is that the gentleman?

3      A.   There's another witness that I wasn't able to get ahold

4   of after.  Is that who you're referring to?

5      Q.   Do you know the name of the gentleman who you did speak

6   with?

7      A.   If I review my report, I could.

8      MS. SIU:  Your Honor.

9      THE COURT:  Sure.  Go ahead.

10      THE WITNESS:  Name Timothy Cronan.

11      THE REPORTER:  Can you spell that?

12      THE WITNESS:  T-i-m-o-t-h-y, C-r-o-n-a-n.

13      Q.   BY MS. SIU:  Is Mr. Cronan the individual by Mr. Lyons'

14   head or his feet?  Do you remember?

15      A.   I believe it was by his head.  The person that was by

16   his feet was gone once I --

17      Q.   Okay.

18      A.   -- stood up.

19      Q.   Okay.  So Mr. Cronan, the individual by Mr. Lyons'

20   head, is that the individual who became physically involved?

21      A.   Only after we were already on the ground.

22      Q.   Okay.  And you did not cite Mr. Lyons for the

23   infraction for not having a rear plate, correct?

24      A.   Correct.

25      Q.   That would be Vehicle Code 5200?

26      A.   Subsection (a), yes.

27      Q.   Subsection (a), yes.  Thank you.  And when -- or when

28   Ms. Gardner was involved, she didn't know why you were

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 18

1   approaching Mr. Lyons, correct?

2       A.   Yeah.  No.  Correct.  I'm sorry.

3       Q.   And she hadn't seen any of the prior interactions,

4   correct?

5       A.   Correct.

6       Q.   So she kind of just walked into the situation without

7   really any context?

8       A.   Correct.

9       Q.   Okay.  And, Deputy can I have the ELMO?

10          Officer, I'm going to show you a brief clip.  I just

11  want to see if you can identify it.  Okay?

12          THE COURT:  Hold on.  First off, what exhibit is this?

13          MS. SIU:  Defense A.

14          THE COURT:  Okay.  Is there audio on here?

15          MS. SIU:  Yes.  And there's a transcript that has been

16  also marked if I can pass it up.

17          THE COURT:  Sure.  Both sides waiving Madam Reporter

18  taking down the audio on Defense A?

19          MR. JUSUF:  So waived.

20          MS. SIU:  So waived.

21          THE COURT:  Thank you.  Now you can proceed.

22      Q.   BY MS. SIU:  I apologize.  I am going to show you what

23  has previously been marked as Defense A.  I'm going to start

24  playing it at minute 1:32?

25                  (Video played - not reported.)

26      Q.   BY MS. SIU:  I'm going to stop it at 1:32.  Do you

27  recognize this?

28      A.   Yes.

1    Q.    What -- do you recognize this as the -- as Mr. Lyons in

2  the image?

3    A.    Yes.

4    Q.    And that white truck you had initiated a traffic stop

5  on?

6    A.    Yes.

7    Q.    And is this from December 22, 2022?

8    A.    Yes.

9    Q.    Is this a fair and accurate representation of your

10  body-worn camera from that day?

11    A.    Yes.

12          MS. SIU:  Your Honor, may I play it?

13          THE COURT:  Any objection?

14          MR. JUSUF:  No objection.

15          THE COURT:  Go ahead.

16              (Video played - not reported.)

17    Q.    BY MS. SIU:  All right.  Pausing Defense A at three

18  minutes 24 seconds.  And, Officer, you see that Mr. Lyons has,

19  like, two red spots on his head?

20    A.    Yes.

21    Q.    One on the front left temple as well as one kind of in

22  the back center of his head?

23    A.    Yes.

24    Q.    All right.  And those weren't present -- and those two

25  injuries or redness areas were from this incident, correct?

26    A.    Yes.

27    Q.    Okay.

28          MS. SIU:  No further questions.

1      THE COURT: Recross? I mean redirect. I'm sorry.

2      MR. JUSUF: Yes, your Honor. Thank you.

3                    REDIRECT EXAMINATION

4   BY MR. JUSUF:

5      Q.   Officer Le Beau, approximately how much time had passed

6   from when the defendant's vehicle stopped to when the physical

7   altercation between you and him occurred?

8      A.   It would be a guess, but a few seconds.

9      Q.   Seconds. And did you have an opportunity to question

10  him about the missing license plate or driver's license or

11  registration or anything like that?

12     A.   No.

13     Q.   Okay. And in those few seconds that was when the

14  defendant was approaching you aggressively and yelling at you?

15     A.   Yes.

16     MR. JUSUF: No further questions.

17     THE COURT: Recross?

18     MS. SIU: Yes.

19                    RECROSS-EXAMINATION

20  BY MS. SIU:

21     Q.   When we saw the body-worn camera, Mr. Lyons had stopped

22  walking towards you, correct?

23     A.   Yes.

24     Q.   Okay. And then you continued to close the distance

25  between him?

26     A.   Correct.

27     Q.   All right. And prior when or about when Mr. Lyons

28  stopped walking towards you, he asked you -- let me get the

1  exact words, "What am I doing?  What are you doing?"  Correct?

2     A.   If that's what in the body camera, I don't remember

3  exactly, yes.

4     Q.   Would you like to review those few seconds of the body

5  camera again?

6     A.   It's -- that's what he said.

7     Q.   Okay.

8          THE COURT:  I'd like to see it again.

9          MS. SIU:  Okay.

10         THE COURT:  Just the first few seconds.  I'm not

11 interested after that.

12    Q.   BY MS. SIU:  Yes, your Honor.  I'm going to -- I'm

13 playing at 1:26.

14              (Video played - not reported.)

15    Q.   BY MS. SIU:  And in this view, you are exiting your

16 patrol vehicle, correct?

17    A.   Yes.

18         MS. SIU:  Okay.  Would you, your Honor, want to view it

19 slower?  It is very fast movement.

20         THE COURT:  Sure.  Slow it down if you like.

21         MS. SIU:  Start it at the 1:24 and have it slower.

22              (Video played - not reported.)

23         THE COURT:  That's fine.

24    Q.   BY MS. SIU:  So at the point you could have stopped

25 walking towards Mr. Lyons when he asked you what you're doing,

26 correct?

27    A.   No.

28    Q.   You could not have stopped walking towards him?

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 22

1     A.   I could have stopped.  But based off of my training and
2   experience, I decided not to.
3     Q.   Okay.  And prior to, again, the physical contact
4   closing the distance, Mr. Lyons wasn't in -- you didn't see him
5   in a bladed stance otherwise ready to engage in some sort of
6   physical altercation, correct?
7     A.   He was not in a bladed stance.
8          MS. SIU:  No further questions, your Honor.
9          THE COURT:  People?
10         MR. JUSUF:  Yes, your Honor.
11                   FURTHER REDIRECT EXAMINATION
12  BY MR. JUSUF:
13    Q.   Officer Le Beau, what is -- is it office and agency
14  policy to have drivers remain in their vehicle during traffic
15  stops?
16    A.   Yes.
17    Q.   What is the purpose of that policy?
18    A.   It's safer for all people involved.
19    Q.   All right.  And when a driver exits their vehicle, what
20  is the normal policy at that point?
21    A.   I wouldn't say specific policy, but it would be, like,
22  to be able to gain control of that individual because a normal
23  person just would remain in the vehicle and someone with
24  different intentions would do what the defendant did.
25    Q.   But if someone were --
26         MS. SIU:  Objection.  Speculation.
27         THE COURT:  Overruled.  He's saying that's part of his
28  training and experience.

1   Q.   BY MR. JUSUF: And if someone were to exit their

2   vehicle and you give them directions to re-enter the vehicle and

3   they do re-enter the vehicle, would that result in a physical

4   altercation?

5   A.   No.

6   MR. JUSUF:  No further questions.

7   THE COURT:  Recross?

8   MS. SIU:  Yes.

9                FURTHER RECROSS-EXAMINATION

10  BY MS. SIU:

11  Q.   Would you want to -- would you want someone who you're

12  speaking to to re-enter a vehicle when you haven't cleared the

13  vehicle not knowing what may or may not be in there --

14  A.   I --

15  Q.   -- for officer safety?

16  A.   The way in this situation he had already made it all

17  the way to back of his bed of his truck, and that's when I

18  decided to gain control of him.

19  Q.   Okay.  So --

20  A.   Attempt to.

21  Q.   I apologize.  So it wouldn't make any sense for him

22  having already physically fully gotten out of the vehicle to

23  close his door for him to turn around, reopen the door, and get

24  inside?

25  A.   The way things happened so fast, my first command was

26  stay in your car.  Once he didn't, then that's when I attempted

27  to gain control of him.

28  Q.   It's not your training and experience for someone

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 24

1   already fully outside and already closed door to re-enter their

2   vehicle, correct?

3       A.    It's a --

4       Q.    When you're --

5       A.    I'm sorry.  I cut you off.

6       Q.    When you were talking about having traffic stops,

7   drivers staying in the vehicle, they are already physically in

8   vehicle and not trying to get out, correct?

9       A.    Correct.

10           MS. SIU:  No further questions.

11           MR. JUSUF:  Nothing from the People, your Honor.

12           THE COURT:  Did you still have the video cued up?

13           MS. SIU:  Yes.

14           THE COURT:  I wasn't looking for that exact part.  Why

15   don't you play it with the idea that we'll watch to see when we

16   heard first command in relation to where the defendant is.

17           MS. SIU:  Okay.

18           MR. JUSUF:  Can we play it live speed?

19           THE COURT:  Live speed?  Sure.

20                   (Video played - not reported.)

21           MS. SIU:  This is minute 1:26.

22           THE COURT:  Stop the video.  Ms. Siu, he clearly tells

23   him stay in the car when the door is still open.

24           MS. SIU:  Two of his feet are already physically out.

25           THE COURT:  That's not what you asked.  You said the

26   car door was closed.

27           MS. SIU:  Okay.  Then I --

28           THE COURT:  Do you agree that is what it shows?

Superior Court of the State of California
County of Riverside

07-07-2023 9:02AM

1          MS. SIU:  That is what it shows, your Honor, if I

2   can --

3          THE COURT:  I'm just asking you.

4          MS. SIU:  Yes.  I apologize.

5          THE COURT:  The way you phrased your last question was

6   the door was already closed, but it clearly is not.

7          MS. SIU:  May I reopen to ask secondary questions?

8          THE COURT:  Ask away.

9      Q.  BY MS. SIU:  As -- you see Mr. Lyons physically out of

10  the vehicle, correct?  This -- his hands were placed on the

11  door, his physical body torso facing you, correct?

12     A.  Yes.

13     Q.  You can see that.  And he was physically outside in the

14  process of his -- closing door his door, correct?

15     A.  Yes.

16     Q.  Okay.  And is it your training and experience that for

17  someone who was already physically outside in the process of

18  looking at you walking towards you to then -- for them to

19  re-enter their vehicle?

20     A.  That would be my preference, yes.

21     Q.  But is that your training and experience to have

22  someone re-enter a vehicle that you have not searched or that

23  you don't -- that you can't see into?

24     A.  I've done it in the past.

25         MR. JUSUF:  Okay.  Okay.  Nothing further, your Honor.

26         THE COURT:  I have some questions, Officer.

27                            EXAMINATION

28  BY THE COURT:

1       Q.   Did you suffer any injuries?

2       A.   No.

3       Q.   And we see in the video, Defense A, that at some point

4   you look like you were going with both of your arms reaching out

5   towards both of his arms; is that accurate?

6       A.   Yes.

7       Q.   And what -- at the point you did that, what was it that

8   you felt required you to take that action?

9       A.   I wasn't sure of the defendant's intentions.  I wasn't

10  sure if he had weapons on him or weapons in close proximity of

11  his vehicle in the bed.  I just wanted to be able to gain

12  control of him.

13      Q.   And as you were approaching towards his arms, how are

14  you doing that?  Were you -- it's kind of hard to tell from the

15  video, but were you doing it sort of in a -- the gentlest manner

16  possible, or was it an aggressive grab like get over here kind

17  of thing?

18      A.   I just put my arms out and was trying to grab him.  I

19  wasn't -- I wasn't expecting his reaction.  I was just trying to

20  grab his arms.

21      Q.   And was it your perspective that before you can even

22  touch his arms that he then countered, I guess, so to speak, or

23  then took other actions?

24      A.   I believe I momentarily touched him and he immediately

25  did the like sweeping motion of his hands.

26      Q.   The whole thing was rather quick, right?

27      A.   Yes.

28           THE COURT:  All right.  Thank you.  Any questions on my

PEOPLE vs JOSHUA L. LYONS
RIF2206272                                                                    Page 27

1   questions?

2           MR. JUSUF:  No, your Honor.

3           THE COURT:  Defense?

4                    FURTHER RECROSS-EXAMINATION

5   BY MS. SIU:

6       Q.   I believe you tried to grab Mr. Lyons' left arm and

7   then you grabbed toward his right ribs, correct?

8       A.   Like very first action, very first movement?

9       Q.   Yes.

10      A.   It's -- what I remember is trying to grab his right

11  wrist.  I'm not sure exactly what my right hand was doing; I

12  think it was going for his left hand.

13      Q.   I actually have it stopped for that exact moment right

14  before contact was made.  Can we just have the ELMO pop up?

15          THE COURT:  Sure.

16          MS. SIU:  So that would be Mr. Lyons' left wrist, arm,

17  and that would be Mr. Lyons' right rib area.

18          THE COURT:  Are you asking him a question?

19          MS. SIU:  Just for, your Honor, since that was.

20          THE COURT:  Oh.  That's what looks like in the video.

21  You might want to ask the witness a question.

22      Q.   BY MS. SIU:  That is your body-worn camera, correct?

23      A.   Yes.

24      Q.   And that is your right hand going towards Mr. Lyons'

25  left wrist?

26      A.   Yes.

27      Q.   And that is your left hand going towards Mr. Lyons'

28  right ribs?

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 28

1      MR. JUSUF:  Object, your Honor.  You can't really see

2  the trajectory of the arms in this perspective.  I can't see how

3  close the left hand is to the chest or what.  It is playing

4  really quickly, but it's --

5      THE COURT:  All right.  Overruled.  You can clean it up

6  if you like.  You can ask follow-up questions.  Anything else?

7      Q.   BY MS. SIU:  It appears to be your left hand touching

8  Mr. Lyons' right ribs, correct?

9      THE REPORTER:  Ribs?

10     Q.   BY MS. SIU:  Ribs.

11     A.   Correct.

12     Q.   And then I'm going to just play one second for it.

13  That would be minute 1:34, correct, as seen on the body worn

14  camera.

15              (Video played - not reported.)

16     THE WITNESS:  It's cut off here, but I see a forearm.

17     Q.   BY MS. SIU:  Okay.  And that would be your left hand

18  making contact with Mr. Lyons' right ribs, correct?

19     A.   Yes.

20     MS. SIU:  All right.  And you can see that -- actually,

21  that's fine.  No further questions.

22     MR. JUSUF:  No further questions, your Honor.

23     THE COURT:  May the witness be excused?

24     MR. JUSUF:  Yes.

25     MS. SIU:  Yes.

26     THE COURT:  All right.  Thank you, Officer.  You're

27  excused.

28     THE WITNESS:  Thank you, your Honor.

Superior Court of the State of California
County of Riverside

07-07-2023 9:02AM

PEOPLE vs JOSHUA L. LYONS
RIF2206272                                                                    Page 29

```
 1              THE COURT:  Further witnesses.
 2              MR. JUSUF:  Not for the People.
 3              THE COURT:  Defense have any witnesses it wishes to
 4  call?
 5              MS. SIU:  No, your Honor.
 6              THE COURT:  Want to move Defense A into evidence?
 7              MS. SIU:  Yes, please.
 8              THE COURT:  Any objection for purposes of prelim only?
 9              MR. JUSUF:  No objection, your Honor.
10              THE COURT:  Defense A admitted into evidence for
11  purposes of prelim only.  Argument from either side.
12              MR. JUSUF:  We would submit subject to rebuttal, your
13  Honor.
14              THE COURT:  Defense?
15              MS. SIU:  Your Honor, I would move for discharge or for
16  a 17(b).  This traffic stop or initial traffic encounter started
17  with Mr. Lyons flipping the officer off.  That is protected
18  under the First Amendment.  When the -- it was -- the traffic
19  stop was then conducted for not having rear plates, which is
20  Vehicle Code 5200, which is an infraction and not an arrestable
21  offense.  The officer did not have probable cause to physically
22  contact, make physical contact with Mr. Lyons at that specific
23  time.  Mr. Lyons had already been out of the vehicle.  The
24  vehicle, the door had not been fully closed, but was in the
25  process of being closed.  Mr. Lyons' body was and face was
26  facing towards the officer asking -- momentarily later asking
27  what the officer was doing, why he was there.  The officer then
28  closed the distance after Mr. Lyons had already stopped walking
```

1   towards the officer.  The officer then made two more steps, or

2   about two more steps, placed his -- the officer placed his hand

3   on Mr. Lyons' wrist and ribs, it was not his hands, to regain --

4   or gain control.

5         At that point Mr. Lyons had already stepped --

6   physically stopped walking.  He was not charging.  He was not

7   running.  He was not really acting aggressively.  He already

8   stopped within a distance of the officer.  He was not otherwise

9   swearing or yelling or calling anyone names or other aggressive

10  behavior that can be seen on the body-worn camera.  So at that

11  point, the officer was not lawfully performing his duties.  And

12  at that point, under CALCRIM 2670 regarding unlawful arrest, he

13  is -- Mr. Lyons is able to use reasonable self-defense if an

14  officer is using excessive force or unreasonable force to detain

15  an individual.

16        And that's what we're proffering at this point is that

17  there was no -- the officer was not performing lawful duties,

18  which is element two in Count 1 PC 69, resisting arrest.  Also

19  element one where it states Mr. Lyons needs to use unlawful use

20  of force.  Again, the CALCRIMs allow for self-defense if the

21  officer is using unreasonable excessive force, again, CALCRIM

22  2670.  And this unlawful arrest, again, is because of an

23  infraction.  The officer elevates or escalates the interaction

24  using excessive force creating a physical incident.

25        Mr. Lyons was not -- had his hands full of his phone as

26  well as his keys.  He was not in a bladed stance, did not

27  attempt to make physical contact in any which way with the

28  officer at any point in time.  And the officer did not ask about

1    Mr. Lyons' rear plates, whether or not he just received the car,

2    whether or not he just purchased it, if he had license plates in

3    the back.  There was no question or really investigation into

4    what the initial traffic stop would have been, which was rear

5    plates.  The officer just elevates the -- escalates the

6    interaction.  The officer that arrests a person must tell the

7    arrested person what they are being arrested for.  When asked,

8    again, Mr. Lyons before any physical contact asked why the

9    officer was even there.

10              And then regarding Count 2, the 241, this is already a

11   misdemeanor.  Again, element five, which matches element two and

12   the PC 69 regarding the officer not performing their lawful

13   duties.  And element seven regarding Mr. Lyons's ability to use

14   reasonable self-defense and force against unreasonable or

15   excessive force by the officer.  So for those reasons, your

16   Honor, I would ask for discharge as the People have not met

17   their burden of proof on several elements or a 17(b) due to the

18   minimal actions prior to the directions between the officer and

19   Mr. Lyons.

20              THE COURT:  Anything else?

21              MS. SIU:  Nothing further.

22              THE COURT:  People?

23              MR. JUSUF:  Yes, your Honor.  We would request at that

24   time the Court issue a holding order in this matter.  As the

25   defense notes -- well, we disagree with the defense position

26   that Officer Le Beau escalated the situation.  We believe the

27   defendant actually escalated the situation.  While, obviously,

28   flipping off a police officer is protected by the First

PEOPLE vs JOSHUA L. LYONS
RIF2206272

1   Amendment, that is not why the arrest occurred.  That is not why

2   the traffic stop initially occurred.  The flipping off of

3   officer just merely drew his attention to the vehicle, and that

4   attention led him to see that the vehicle had no license plate

5   on the rear of vehicle.  So it was a lawful stop.

6          And the officer gave a lawful order for the defendant

7   to remain in the vehicle as was stated in his standard procedure

8   and almost universally known by pretty much any motorist in the

9   state.  The defendant refused to comply with that lawful order

10  and remain in his vehicle and started aggressively approaching

11  the officer.  At that point his demeanor was aggressive.  The --

12  it was -- as seen in the video, it was only few seconds long.

13  So the officer didn't know if he had any weapons, had any

14  intention to attack the officer, so the officer made a

15  reasonable and lawful attempt to take control of the defendant

16  in that moment.  And that's when the defendant struck him with a

17  closed fist to the head.  And then the officer then had probable

18  cause to arrest the defendant for assaulting the officer.

19         And so while he was attempting to do that, he was

20  performing his lawful duties and the defendant put the officer

21  in a choke hold and it actually required several other civilian

22  bystanders to get involved to take control of the defendant.

23  And for those reasons we would ask that he be held to answer as

24  charged.

25         THE COURT:  Ms. Siu, anything else?

26         MS. SIU:  Well, your Honor, the officer has to be

27  acting in lawful duty for when Mr. Lyons is resisting.  He

28  wasn't acting in his lawful duty when the officer put hands on

1 | Mr. Lyons when there was no reason to, no probable cause to.

2 | THE COURT: Let me stop you there.

3 | MS. SIU: Yes.

4 | THE COURT: Are you just glossing over the fact

5 | Mr. Lyons refused the order to get back in his car?

6 | MS. SIU: No, I'm not, your Honor.

7 | THE COURT: Okay. So isn't that justification to do

8 | something other than just letting him continue to not comply?

9 | What is an officer supposed to do when he pulls someone over?

10 | And in this case I don't have any evidence to support that it

11 | was an unlawful stop. I don't care what his license plates are.

12 | If they're not on the back of the car where they're supposed to

13 | be, then it's a lawful stop. He may not get a ticket. He may

14 | not have anything happen to him if he just stayed in his car and

15 | let the officer do his job. But he didn't do that.

16 | Hey, Mr. Lyons, I'm talking to your lawyer. You might

17 | want to listen to what I'm saying. Are you done?

18 | THE DEFENDANT: Sure.

19 | THE COURT: Okay. You make the argument that the

20 | officer didn't ask him where his plates were and any of this

21 | other stuff. He never got a chance to because Mr. Lyons from

22 | the word go failed to comply with the reasonable command of

23 | getting back in his car. That's all he had to do.

24 | If you're looking at the video from what started all of

25 | this, it's Mr. Lyons by failing to comply with his reasonable

26 | command, which is get back in your car. Everything after that

27 | appears to be justified by the officer. In fact, when he puts

28 | his hands on him, or attempts to, it appears at least from the

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 34

1   video that it's not being done in a very aggressive manner.

2         And then it's the defendant who essentially makes the

3   first aggressive move I'll say because the officer just wants

4   him to comply with the command, and he's failing to do so.

5         MS. SIU:  Your Honor, this happened very fast in time.

6   He's already physically out of the vehicle.

7         THE COURT:  You don't think he heard that command?

8         MS. SIU:  I'm not saying he didn't hear the command,

9   your Honor.  It -- he's already physically outside the vehicle

10  and then within milliseconds, the door already closed.

11        THE COURT:  Do the civilians, the folks that drive

12  around, get to dictate how these traffic stops go?

13        MS. SIU:  No, I'm not saying that, your Honor.  But for

14  these specific facts and these specific circumstances, had the

15  officer already been approaching, he was still inside the

16  vehicle and then he gets outside the vehicle, opens the door and

17  gets outside the vehicle, then I don't think I can have the same

18  argument; however, they simultaneously both open the door, both

19  step outside of the vehicle almost simultaneously.

20        THE COURT:  Where is the unlawful detention?

21        MS. SIU:  So he's already stopped.  Mr. Lyons already

22  stopped walking.  He stopped at where his gas tank would be.

23  He's not yelling or aggressively speaking to the officer by

24  calling him names, swearing, or anything like that.  He's

25  already stopped.  He's not in any sort of bladed stance, any

26  sort of fighting stance.  He has a handful of his own property.

27  He's not making any sort of aggressive gestures towards the

28  officer.

1      THE COURT:  He's failing to follow the command of the

2   officer.

3      MS. SIU:  I understand, your Honor, but the officer is

4   still elevating or escalating the use of force or need for

5   force.

6      THE COURT:  What's the officer supposed to do when the

7   person fails to follow commands?  What do you want them to do?

8   Just let him let him not comply?

9      MS. SIU:  No, your Honor, but this was a traffic stop

10  for not having rear plates.

11     THE COURT:  So what?

12     MS. SIU:  That is a valid reason for a traffic stop.

13     THE COURT:  And you're saying what?

14     MS. SIU:  It's a valid reason for the traffic stop.

15     THE COURT:  Of course it is.

16     MS. SIU:  But -- and during these facts of whether or

17  not the officer was lawfully performing a duty at the time that

18  he placed his hands and then escalated the situation to physical

19  force with Mr. Lyons.  I'm saying that would be unlawful, and

20  that would be excessive force.

21     THE COURT:  Your argument to me is that anyone that

22  gets pulled over, gets out of their car really fast, walks

23  towards the law enforcement officer, the officer says get back

24  in your car, the driver just ignores the officer, then the

25  officer should do nothing?

26     MS. SIU:  No.

27     THE COURT:  Is that what you're saying?

28     MS. SIU:  No, your Honor.

1          THE COURT:  What should the officer do?

2              MS. SIU:  I'm saying in this specific --

3          THE COURT:  What should the officer do?

4              MS. SIU:  He should also assess the situation.  The

5    officer did not assess whether or not Mr. Lyons had any weapons.

6    He presumed that he did even though there were none.

7          THE COURT:  He's trying to.  He's trying to get control

8    so he can assess.  The defendant, he's not listening to him

9    clearly.  He -- he's yelling back at him why did you pull me

10   over as opposed to, oh, I better get back in the car because

11   that's what the officer told me to do and I'm being pulled over,

12   and I should comply, but he didn't.

13        Maybe you and I will just go round and round on this,

14   but I don't see anything inappropriate by this officer's

15   actions.  And by asking him to get back in his car and he fails

16   to do so, the officer is then able to do something to gain

17   control and get him to comply.  He appears to be grabbing his

18   arm and his right -- left chest area -- right chest area not in

19   a very aggressive manner.  And then the defendant takes the more

20   evasive maneuvers, at least in my opinion.  And I think

21   what's -- once that happens, that's the PC 69.  And during the

22   course of that PC 69, he punches him in the face and gets him in

23   a choke hold.  That's not misdemeanor conduct.

24        You don't get to beat up law enforcement.  The officer

25   did nothing wrong.  He's held to answer as charged --

26            MS. SIU:  Yes, your Honor.

27        THE COURT:  -- as a felony.  17(b) is denied.  He will

28   be held to answer to the misdemeanor as well.

PEOPLE vs JOSHUA L. LYONS
RIF2206272                                                                     Page 37

```
 1          He'll be found in violation of his misdemeanor
 2   probation.  That will be set for sentencing.  We can trail it
 3   along with the arraignment on the Information.
 4          MS. SIU:  Yes.
 5          THE COURT:  What's our arraignment date?
 6          THE CLERK:  7/13 back to Department 41.
 7          THE COURT:  July 13.
 8          MS. SIU:  13.
 9          THE COURT:  Is that a good date for you and your
10   client, Ms. Siu?
11          MS. SIU:  We'll take it.
12          THE REPORTER:  I'm sorry?
13          MS. SIU:  We'll take it within time.
14          THE COURT:  Matter will be set for arraignment on the
15   Information on July 13 at 8:30, Department 41.
16          Mr. Lyons, you are ordered to appear at that date and
17   time without any further notice.  Do you understand?
18          THE DEFENDANT:  Yes, sir.
19          THE COURT:  All right.  Anything further?
20          MR. JUSUF:  Nothing from the People, your Honor.
21          MS. SIU:  No, your Honor.
22          THE COURT:  People -- both sides stipulate the exhibit
23   may be returned to defense?
24          MR. JUSUF:  So stipulated.
25          MS. SIU:  Yes.
26          THE COURT:  That will be returned.
27                       (Proceedings concluded.)
28
```

PEOPLE vs JOSHUA L. LYONS
RIF2206272

Page 38

1                    REPORTER'S CERTIFICATE

2

3

4   PEOPLE OF THE STATE OF CALIFORNIA,    )
                                          )
5                    Plaintiff,           )
                                          )
6   vs.                                   )
                                          )  Case No. RIF2206272
7   JOSHUA L. LYONS,                      )
                                          )
8                    Defendant.           )
                                          )
9   _____     )

10          I, TISHA COLLINS, Certified Shorthand Reporter,

11   CSR 12160, do hereby certify:

12          That on JUNE 28, 2023, in and for the County of

13   Riverside, State of California, I reported in machine shorthand,

14   to the best of my ability, a true and correct report of the

15   testimony given and the proceedings had in the above-entitled

16   case, pages 5 through 37; and that the foregoing is a true and

17   accurate transcription of my stenotype notes and is the whole

18   thereof.

19

20

21

22   DATED:  Riverside, California; JULY 6, 2023.

23

24

25

26

27                    _____
                           TISHA COLLINS, CSR 12160

28